## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PETROLEUM TOWERS–COTTER, LLC** | § | **CASE NO. 18-50197-RBK** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |

### MOTION TO APPROVE SALE OF PROPERTY OF THE ESTATE
### FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

**TO THE HONORABLE RONALD B. KING, CHIEF UNITED STATES BANKRUPTCY JUDGE**:

Comes now, Petroleum Towers – Cotter, LLC, the Debtor-in-possession (hereinafter "Debtor" or "Seller"), by and through its counsel of record, who files this Motion to Sell Property of the Estate Free and Clear of Liens, Claims, Encumbrances and Interests (the "Sale Motion"). In support hereof, the Debtor respectfully represents as follows:

1. This Motion is filed pursuant to 11 U.S.C. §§ 105(a) & 363 and Fed. R. Bankr. P. Rules 2002, 6004, 9007 & 9014 and Local Bankruptcy Rules 2002 and 6004.

### Jurisdiction

2. On February 1, 2018 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). Debtor continues in possession of its property and it is operating and managing its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108. No party has requested the appointment of a trustee or examiner in this chapter 11 case, and no committees have been appointed or designated.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## Property to be Conveyed

4.      The property of the bankruptcy estate which is the subject of this Motion is all of

the Debtor's right, title, and estate interest in and to all of the following:

A.      The real property located at 8626 and 8700 Tesoro Dr., San Antonio, Texas 78217, which is commonly known as the "Petroleum Towers" and described on the attached Exhibit "A", together with all structures, buildings, improvements and fixtures affixed or attached thereto and all easements and rights appurtenant thereto, including, without limitation: (i) all easements, privileges, tenements, hereditaments, appurtenances and rights belonging or in any way appurtenant to such real property; (ii) any strip or gore or any land lying in the bed of any street, road, alley or right-of-way, open or closed, adjacent to or abutting such real property; and (iii) any and all air rights, subsurface rights, development rights and water rights permitting to such real property (all of the foregoing being collectively referred to herein as the "Real Property");

B.      All leases, including associated amendments, with all persons ("Tenants") leasing the Real Property or any portion thereof as of the Effective Date[1] or entered into in accordance with the Agreement[2] prior to Closing[3] (collectively, the "Leases"), together with all security deposits held in connection with the Leases and all of Seller's right, title and interest in and to all guarantees and other similar credit enhancements providing additional security for such Leases;

C.      Seller's interest, if any, in (i) any and all tangible personal property owned by Seller located on or used exclusively in connection with the Real Property, including, without limitation, sculptures, paintings and other artwork, equipment, furniture, tools and supplies located on the Real Property as of the Effective Date (collectively, the "Tangible Personal Property"); and (ii) any and all plans and specifications, architectural and engineering drawings and the common name of the Real Property (collectively, the "Intangible Personal Property," and collectively with the Tangible Personal Property, the "Personal Property");

D.      All service contracts which Buyer expressly agrees to assume in writing prior to the expiration of Buyer's Inspection Period, entered into by Seller relating to the operation of the Property as of the Effective Date or entered into by Seller in accordance with the Agreement prior to Closing, excluding Seller's insurance and Seller's asset and property management agreements, which will be terminated at Closing and not assumed by Buyer (collectively, the "Contracts"); provided, however, that Seller shall, at Closing, provide notices of termination with regard to certain Contracts, as provided in the Agreement; and

E.      To the extent transferable, any and all building permits, certificates of occupancy and other certificates, permits, consents, authorizations, variances or waivers, dedications,

---

[1] The "Effective Date" under the Agreement is February 22, 2019.
[2] The "Agreement" is the Agreement for Purchase and Sale attached hereto as Exhibit "B".
[3] The "Closing" is defined under paragraph 7.2 of the Agreement as the date that is thirty (30) days after the expiration of the Inspection Period (as the same may be extended in accordance with the terms of the Agreement).

subdivision maps, licenses and approvals from any governmental or quasi-governmental agency, department, board, commission, bureau or other entity or instrumentality relating to the Real Property (collectively, the "Permits").

(collectively, all of the foregoing shall hereinafter be referred to as "the Property").

## Background

### A.    The Debtor's Business

5.    The Debtor is a Delaware single member limited liability company with its principal place of business and all of its assets located in San Antonio, Texas.  The Debtor owns and operates two eight-story commercial real estate office buildings with surrounding parking facilities on 9.601 acres, located at 8626 and 8700 Tesoro Drive, San Antonio, Texas, which are commonly known as the "Petroleum Towers".

6.    This is a single asset real estate bankruptcy as defined by 11 U.S.C. §101(51B). Debtor's primary assets are the Petroleum Towers properties.

7.    A purchase money mortgage secured by the properties is held by Broadway National Bank (hereinafter "Broadway").  Broadway filed fully secured Proofs of Claim herein in the amount of $15,948,068.73 and $347,142.11. According to recent tax certificates, ad valorem taxes due to the Bexar County Tax Assessor/Collector are approximately $1,409,385.13 for the 2017-2018 tax years.  The deadline to file proofs of claim in this case has expired and Debtor's counsel has completed an analysis of claims in this case.  When considering the claims scheduled by the Debtor which are not marked "disputed", and the proofs of claim filed by parties which the Debtor's representatives have initially determined are not in dispute, it appears there are fifty-five (55) total creditors in this case other than the secured lender and the ad valorem taxing authorities.  The total breakdown of sums owed on these claims are as follows:

mechanics and materialman lien claimants - $190,593.24 ; unsecured creditors (both priority and general unsecured) - $222,972.93. Thus, the total amount the Debtor may owe creditors other than Broadway and Bexar County appears to be $413,566.17. Twenty-five (25) of these creditors are tenants of the Petroleum Towers properties, who are creditors for the amounts of their security deposits. The security deposit claims appear to total $120,069.93. Therefore, approximately 45% of the creditors in the case are tenants, holding approximately 27% of the total dollar amount of claims other than the mortgage and ad valorem taxing entity claims.

8.    The Debtor filed this case seeking to reorganize its debts under Chapter 11 of the Bankruptcy Code through a liquidating plan. Debtor has an essential need to sell the Petroleum Towers properties, payoff the ad valorem property taxes and other valid liens encumbering the property, and to satisfy as much of the priority and general unsecured debt as possible. This case was filed with the goal of freeing up resources to allow the Debtor to make certain critical repairs to its most valuable assets, provide the Debtor time to sell the Petroleum Towers properties, pay off the Debtor's creditors, and preserve the remaining equity for the heirs of the Cotter Estate.

**B.    Debtor's Marketing/Sales Efforts and the Sale Procedures Motion**.

9.    On February 16, 2018, the Debtor filed an Application to Employ Cushman & Wakefield ("Cushman") as Real Estate Broker for the Debtor-in-Possession (Doc. #21). An Order Approving the retention of Cushman as Broker for the Debtor was entered on March 13, 2018 (Doc. #31) under the terms of the Listing Agreement for Sale attached as Exhibit "A-1" (Doc. #21-1) to the Application (the "Listing Agreement").

10.     Pursuant to the terms of the Listing Agreement, Cushman marketed the Property employing a thorough and time-tested sales process that commenced on January 15, 2018, and ended at the end of January, 2019.  Specifically, Cushman took the following steps to market the Property:

A.     On or about February 28, 2018, Cushman released a sales flyer to 6349 potential buyers in a database maintained by Cushman which contained contact information for buyers and investors who are known to be interested in properties of this type. The flyer contained information on all of the Houston and San Antonio area properties in the Cotter Estate portfolio, inviting potential buyers to seek additional information on all or a single Cotter property.

B.     On the same date, Cushman also released an offering memorandum which contained 182 pages of detailed information on the Cotter Estate properties, including information on each individual property, the markets in which such properties were situated, and financial information concerning the properties.  The offering memorandum was set up to be accessed online by buyers who desired further information.

C.     Cushman also established a Virtual Data Room (the "VDR") containing the following types of documents that a potential buyer would find important prior to making a decision about bidding on the Property: copies of leases, operating statements, service agreements and capital expenditure histories.  Any potential buyer could access the detailed information concerning a particular property by requesting access to the VDR and completing a confidentiality agreement.  The Property was also listed on various commercial real estate marketing websites such as LoopNet.com and Costa Real Estate (Costare.com).

D.      Cushman received a total of 120 requests for confidentiality agreements.  A total of 89 potential investors accessed information from the VDR concerning the Property.

E.      Cushman completed at total of 23 tours of the Property with potential buyers who requested such a tour.

F.      Cushman set a timeline for potential buyers to make bids on the Property.  Buyers first presented initial offers which were due by the beginning of May, 2018.  A total of 57 offers were made for multiple Cotter properties which included the Petroleum Towers properties.  A total of 9 offers were made exclusively on the Petroleum Towers properties by potential buyers.

G.      Subsequently, parties were invited to make "Best and Final Bids".  After receiving such updated bids, three potential buyers were selected to be interviewed by Cushman and a representative of the Debtor.

H.      At the conclusion of the sales and marketing process, it was determined that the best and final bid was made by an entity known as Windmill Investments, LLC (hereinafter "Windmill" or the "Buyer").  According to its website, Windmill "is a private real estate investment company specializing in the identification of undervalued or under-performing properties with strong growth potential . . . work[ing] with single-family homes, multifamily apartment complexes and commercial offices."  Windmill's bid for the Property is $15,700,000.00 (the "Purchase Price").  The bid is not sufficient to pay all of the secured debt owed against the Petroleum Towers properties, however, in consultation with the Debtor's Broker, it has been determined that the bid submitted by the Buyer is the highest or otherwise best offer for the Property.  On February 4, 2019, Cushman advised Windmill's representative of the winning bid.

C.     **The Purchase and Sale Agreement**

11.     Counsel for the Buyer and the Estate of James F. Cotter negotiated and have now executed an Agreement for Purchase and Sale of the Property (the "Agreement") on February 22, 2019, a true and correct copy of which is attached hereto as Exhibit "B".

12.     Pursuant to Section 10.1.3 of the Agreement, the Debtor is required to obtain Bankruptcy Court approval of the transaction on or before 40 days after the Effective Date.[4]

**The Liens, Claims, Encumbrances and Interests**

13.     Debtor seeks to sell the Property free and clear of liens, claims, encumbrances and interests pursuant to 11 U.S.C. §363.  The following liens, claims, encumbrances and interests are known to exist against the Property:

A.     Ad valorem property taxes owed to Bexar County and the entities for which it collects such taxes.

B.     Broadway National Bank: (i). Amended and Restated Deed of Trust, Security Agreement and Financing Statement dated March 14, 2016, recorded in Volume 17757, Page 440, Real Property Records of Bexar County, Texas, executed by Petroleum Towers-Cotter, LLC, securing payment of one note of even date therewith in the principal sum of $16,550,000.00, payable to the order of Broadway National Bank, as therein provided; (ii). Said lien being further secured by Assignment of Rents of even date therewith recorded in Volume 17757, Page 462, of the Real Property Records of Bexar County, Texas. [Note: it is stated therein that the note and deed of trust are given in renewal and extension of amended and restated promissory note in the original principal amount of $17,000,000.00, secured by a Deed of Trust recorded in Volume 11925, Page 1282, Real Property Records of Bexar County, Texas; modified by Mortgage Loan Modification Agreement recorded in Volume 12206, Page 993, Real Property Records of Bexar County, Texas, and Assumption Agreement as evidenced by the Memorandum of Assumption Agreement recorded in Volume 13810, Page 307, Real Property Records of Bexar County, Texas]; (iii). Deed of Trust, Security Agreement and Financing Statement dated March 14, 2016, recorded in Volume 17757, Page 462, Real Property Records of Bexar County, Texas, executed by Petroleum Towers – Cotter, LLC, a Delaware limited liability company, securing payment of one note of even date therewith in the principal sum of $450,000.00 executed by Cotter & Sons, Inc., a Texas Corporation, payable to the order of Broadway National Bank, as therein provided; (iv). Said lien being further secured by Assignment of Rents of even date therewith recorded in Volume 17757, Page 494, of the Real Property Records of Bexar County, Texas.

[4] Debtor's counsel calculates this date to be on or before April 3, 2019.

C.      Mechanic's lien Affidavit executed by Trane US, Inc., as Contractor, dated April 19, 2017, recorded in Volume 18466, Page 1894, Real Property Records of Bexar County, Texas, claiming the sum of $107,492.42, due and owing by Petroleum Towers – Cotter, LLC, and/or Cotter & Sons, Inc.

D.      Mechanic's Lien Affidavit executed by Texas Chiller Systems, LLC, as Contractor, dated October 11, 2017, recorded in Volume 18790, Page 1332, Real Property Records of Bexar County, Texas, claiming the sum of $83,100.82, due and owing by Petroleum Towers – Cotter, LLC.

14.      Debtor's counsel has ensured that each of the foregoing creditors or parties-in-interest are listed on the certificate of service attached to this Motion and will receive notice of this Motion.

15.      Debtor seeks an order pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, authorizing the Debtor to transfer the Property to the Buyer, and such transfer be deemed to (a) constitute a legal, valid, binding and effective transfer of the Property, (b) vest the Buyer with title to the Property and (c) upon the Debtor's receipt of the Purchase Price, be free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and claims. Debtor further requests an order that such liens, including mechanics, materialmen and subcontractor liens and rights to receive payment of trust funds, claims and other interests will attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Property.

16.      Notwithstanding the foregoing, Debtor also requests that the Sale Order provide that at Closing, Presidio Title (the "Title Company"), which is title company closing the Sale, shall pay the full amount of taxes or assessments due and owing to the following governmental entities, pro-rated to the date of closing:

*Page -8-*

(A).    Bexar County.

17.    Notwithstanding the foregoing, Debtor also requests that the Sale Order provide that at Closing, the Title Company closing the Sale shall pay 100% of the remaining sales proceeds, after deducting the brokerage commissions and costs of sale attributable to the seller under the Agreement, to Broadway National Bank.  This request stems from the fact that the highest, or otherwise best, offer for the Property was not sufficient to pay all of the ad valorem taxes and mortgage indebtedness secured by the Property.  Thus, there will be a deficiency remaining after the sale which remain due and owing to Broadway.

18.    With respect to the Mechanic's Lien claimants identified above, the amounts owed under such liens would be paid by the Estate of James F. Cotter, Deceased, upon the successful Closing of a sale of the Property.

### Good Faith of Purchaser

19.    The Agreement was negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith and from arms'-length bargaining positions.

20.    The Buyer is not an "insider" or "affiliate" or the Debtor as those terms are defined in the Bankruptcy Code.  Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Buyer has not acted in a collusive manner with any person, and the aggregate price paid by the Buyer for the Property was not controlled by any agreement among competing bidders for the Property.

21.    The Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer proceeded in good

faith in connection with all aspects of the Sale, including: (i) participating in good faith in the

sales process; (ii) neither inducing nor causing the Debtor's Chapter 11 filing; and (iii)

disclosing all payments to be made by the Buyer in connection with the Sale.  Accordingly, the

Buyer is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code

and the Debtor requests such a finding in the Sale Order.

## Highest or Otherwise Best Offer

22.　　　After being adequately exposed to the market for approximately one year, the bid

submitted by the Buyer is the highest or otherwise best offer for the Property.  The marketing

process employed to date was an efficient process that was well designed to maximize the return

from the sale of the Property for the benefit of the Debtor's estate and its creditors.  It has been

publicly announced since February, 2018, that the Debtor desired to sell the Property, and the

Debtor's Broker marketed the Property thoroughly and diligently as described herein.  As of the

date of this Motion, no other person or entity has submitted an offer to purchase the Property for

an amount that would allow the Debtor's Estate to realize a greater economic value than the offer

submitted by Buyer.  Therefore, under the guidelines established by the Court, the Debtor's

representative's determination that the Agreement constitutes the highest or otherwise best offer

for the Property is a good, valid and sound exercise of the Debtor's business judgment.

## No Fraudulent Transfer

23.　　　The consideration provided by the Buyer pursuant to the Agreement (i) is fair and

reasonable, (ii) is the highest or otherwise best offer for the Property, (iii) will provide a greater

recovery for the Debtor's estate than would be provided by any other available alternative and

(iv) constitutes reasonable equivalent value (as those terms are defined in each of the Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Debtor's determination that the Agreement constitutes the highest or otherwise best offer for the Property constitutes a valid and sound exercise of the Debtor's representative's business judgment. Approval of this Sale Motion, the Agreement, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors and other parties-in-interest including the equity owner(s) of the Debtor.

24.    The Buyer is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Buyer and the Debtor.  The Buyer is not holding itself out to the public as a continuation of the Debtor.  The Buyer is not a successor of the Debtor or its estate and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer and the Debtor.

**Compelling Circumstances for an Immediate Sale**

25.    Good and sufficient reasons for approval of the Agreement and the Sale have been articulated.  The relief requested in this Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest, including the equity owners of the Debtor.  The Debtor has demonstrated (i) good, sufficient and sound business purposes and justifications for approving the Agreement, and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a plan of liquidation, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate and the Sale

will provide the means for the Debtor to maximize distributions to its creditors and minimize the deficiency liability of its equity owners.

26.     Given all of the circumstances of this Chapter 11 case and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's representative's business judgment and should be approved.

27.     The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

### The Sale is Authorized Under Section 363(b)(1) of the Bankruptcy Code

28.     Bankruptcy Code section 363(b)(1) provides that a debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

29.     Courts generally approve sales outside the ordinary course of business under section 363(b)(1) of the Bankruptcy Code when a sale is in the best interests of the estate. *See, e.g., In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (noting that two Seventh Circuit Court of Appeals cases have employed, for purposes of approving settlements, "the same 'best interest of the estate' test that emerges under Section 363(b) (*citing In re Energy Co-op., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989); *In re Am. Reserve Corp.*, 841 F.2d 159, 161 (7th Cir. 1987)).  It has also been said that "[a] sale is permissible and will be authorized as long as the [debtor-in-possession] has an "'articulated business justification.'" *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *In re UAL Corp.*, 443 F.3d 565, 571 (7th Cir.

2006).    A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. *See Myers v. Martin* (*In re Martin*), 91 F.2d 389, 395 (3d Cir. 1996).

30.    A debtor-in-possession "has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to 'great judicial deference' as long as a sound business reason is given." *In re Efoora, Inc., 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012)* (*citations omitted*).  The approval of a sale is within a bankruptcy court's discretion. *Id.* at 488–89 (*citing Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004); *In re Irvin*, 950 F.2d 1318, 1320 (7th Cir. 1991)).  Nonordinary course sales are generally approved under section 363(b)(1) of the Bankruptcy Code "where two standards are met: (1) business justification; and (2) the sale occurred in good faith." *In re Shary*, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993) (*citing In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

### The Sale Satisfies the Requirements of Section 363(f)

31.    Section 363(f) of the Bankruptcy Code permits the Debtor to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).  As section 363(f) of the Bankruptcy Code is stated in the disjunctive, a sale can be authorized if the Debtor can meet any one of the five conditions. *See In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met); *see also In re Shary*, 152

B.R. at 725 (stating that a sale can be authorized if the trustee "can prove any of the five conditions" enumerated under § 363(f)). The Debtor believes that it will be able to demonstrate at the Sale Hearing, if necessary, that it has satisfied one or more of these conditions. Conversely, the Sale can be approved pursuant to section 363(f)(2) of the Bankruptcy Code without an Objection. *In re Shary*, 152 B.R. at 725; *see also FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) (holding that "lack of objection (provided of course there is notice) counts as consent" and that "[i]t could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold." (citations omitted)); *In re Rapraeger*, 534 B.R. 778, 784 (Bankr. W.D. Wis. 2015) (holding that approval of the sale was proper under section 363(f)(2) where the bank elected not to object (*citing FutureSource LLC*, 312 F.3d at 285)).

32.     Pursuant to 11 U.S.C. §363(f), a debtor is permitted to sell property "free and clear of any interest in such property of an entity other than the estate, only if—

(1).    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2).    such entity consents;
(3).    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4).    such interest is in bona fide dispute; or
(5).    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

With respect to Bexar County, it will be paid in full at or prior to the Closing. With respect to Broadway, it has given preliminary approval for the sale contemplated hereby which Debtor believes will be consent to the sale.  With respect to the mechanic and materialman's lienholder's identified hereinabove, the entity which owns and controls the Debtor has consented to payoff such entities at a successful Closing of the sale referenced herein in exchange for fully

executed releases of such mechanic's liens.  Such holders could be compelled in a legal or equitable proceeding to accept a money satisfaction for their interests.  Therefore, the Sale contemplated herein fully satisfies the requirement of Section 363(f).

### Applicability of Sale Order upon Dismissal or Conversion

33.     Debtor requests that the Court find that the provisions of the Order approving this Motion (the "Sale Order") apply in the event this case is dismissed or converted to a different Chapter of Title 11, United States Code.

### Waiver of the Stay Under Bankruptcy Rule 6004(h) is Appropriate

34.     Debtor further requests that the Court order that the Sale Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, Federal Rule of Civil Procedure 62(a) or otherwise, and that the Debtor and the Buyer are authorized to close the Sale immediately upon entry of this Order. The  Sale  has  been  well-advertised and the Property has been diligently marketed.  There is no just reason for further delay.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests that the Court enter the Sale Order substantially in the proposed form submitted herewith, approving the Sale of the Property to Windmill Investments, LLC, free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. §363, and granting such other related relief as this Court deems appropriate.

Respectfully submitted,

LAW OFFICE OF H. ANTHONY HERVOL
4414 Centerview Drive, Suite 200
San Antonio, Texas 78228
(210) 522-9500
(210) 522-0205 (Fax)


By____/s/ H. Anthony Hervol_____
        H. Anthony Hervol
        State Bar Number 00784264
        Attorney for Debtor

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the above and foregoing Motion has been served upon the parties listed below by the methods indicated hereunder, and to the parties on the attached mailing list (unless such parties are also listed on this Certificate as having received notice through the Court's ECF Filing System), by United States Mail, First Class Delivery, postage prepaid, on this 25th day of March, 2019.

**DEBTOR:**
Petroleum Towers – Cotter, LLC
c/o Marcus P. Rogers, P.C.
2135 E. Hildebrand
San Antonio, Texas 78209
*Via Electronic Mail, with consent*

**LIENHOLDERS:**
Bexar County
c/o its attorney,
Don Stecker
Linebarger Goggan Blair & Sampson, LLP
711 Navarro Street, Ste 300
San Antonio, Texas 78205
*Via the Court's ECF Filing System*

Broadway National Bank
c/o its attorney,
James A. Hoffman
Clemens & Spencer
112 East Pecan Street, Suite 1300
San Antonio, Texas 78205
*Via the Court's ECF Filing System*

Trane US, Inc.
Mark O. Anderson
Wagner, Falconer & Judd Ltd.
Fifth Street Towers
100 South Fifth Street, Suite 800
Minneapolis, MN 55402
*Via First Class Mail, postage pre-paid and*
*Electronic Mail*

Texas Chiller Systems, LLC
c/o its attorney,
J. Philip Collier
Law Office of Philip Collier
7800 I.H. 10 West, Suite 800
San Antonio, TX 78230
*Via the Court's ECF Filing System*

**REQUESTING NOTICE:**
Ben Bingham
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, Texas 78212
Counsel for Marcus P. Rogers,
Independent Administrator of the Estate
of James F. Cotter, deceased
*Via the Court's ECF Filing System*

Hayden & Cunningham, PLLC
c/o D. Wade Hayden
7750 Broadway
San Antonio, TX 78209
*Via the Court's ECF Filing System*

Rachel R. Obaldo
The Attorney General of Texas
300 W. 15th Street
Mail MC-008
Austin, TX 78701
*Counsel for the Texas Comptroller of Public Accounts*

**UNITED STATES TRUSTEE:**
Post Office Box 1539
San Antonio, Texas 78295-1539
*Via the Court's ECF Filing System*

                         _/s/ H. Anthony Hervol_____
                         H. Anthony Hervol

Label Matrix for local noticing
0542-5
Case 18-50197-rbk
Western District of Texas
San Antonio
Mon Mar 25 11:15:53 CDT 2019

Petroleum Towers - Cotter, LLC
c/o Marcus P. Rogers, PC
2135 E Hildebrand
San Antonio, TX 78209-6332

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

Ace Sprinklers
8211 Ermington
San Antonio, TX 78254-2568

Affordable Venture Home Healthcare,
8626 Tesoro Drive, Suite 205-G
San Antonio, TX 78217-6217

Alamo Area Council of Governments
8700 Tesoro Dr #160
San Antonio, TX 78217-6221

Alamo Blinds, Shades & Shutters
1110 W. Basse Rd Ste.101
San Antonio, TX 78212-1003

(p)ALLIANCE SHIPPERS INC
516 SYLVAN AVENUE
ENGLEWOOD CLIFFS NJ 07632-3022

Alliance Shippers, Inc
8626 Tesoro Drive, Suite 525
San Antonio, TX 78217-6237

Allied Equipment, Inc.
8626 Tesoro Drive, Suite 400
San Antonio, TX 78217-6225

Alpha Terra Engineering, Inc.
8626 Tesoro Drive, Suite 810
San Antonio, TX 78217-6217

AmCan Equipment Rentals Inc
8626 Tesoro Drive, Suite 460
San Antonio, TX 78217-6234

Aslan Realty
8626 Tesoro Drive, Suite 502
San Antonio, TX 78217-6217

Astex Tax Consulting
8626 Tesoro Drive, Suite 205-K
San Antonio, TX 78217-6217

BJ Corp. d/b/a National Building Service
c/o Richie & Gueringer, P.C.
112 East Pecan Street, Suite 1420
San Antonio, TE 78205-1560

BJ Corporation d/b/a National Building Servi
6017 Rittiman Plaza
San Antonio, Texas 78218-5216

Bettye Ruth Cotter
3601 N.W. 62nd Street
Oklahoma City, OK 73112-1401

Bexar County
c/o Don Stecker
711 Navarro, Suite 300
San Antonio, TX 78205-1749

Bexar County
c/o Linebarger, Goggan et al
711 Navarro, Suite 300
San Antonio, TX 78205-1749

Blackmon-Mooring
4808 Perrin Creek
San Antonio, TX 78217-3746

Broadway Bank
c/o Leslie M. Luttrell
100 NE Loop 410, Ste. 615
San Antonio, TX 78216-4713

Broadway National Bank
P.O. Box 171250
San Antonio, TX 78217-8250

Broadway National Bank
c/o James A. Hoffman
Clemens & Spencer
112 E. Pecan - Ste. 1300
San Antonio, TX 78205-1531

CAS Consulting & Services, INC
8626 Tesoro Drive, Suite 205-Q
San Antonio, TX 78217-6217

CPI Office Products
P.O. Box 292130
Lewisville, TX 75029-2130

CPS Energy - Bankruptcy Section
145 Navarro, Mail Drop 110909
San Antonio, TX 78205

Cain Law Office
8626 Tesoro Drive, Suite 811
San Antonio, TX 78217-6217

Cascade Water Services
113 Bloomingdale Rd
Hicksville, NY 11801-6547

Catalyst Oilfield Services, LLC.
8626 Tesoro Drive, Suite 820
San Antonio, TX 78217-6230

Chuck Wright
8626 Tesoro Drive, Suite 515
San Antonio, TX 78217-6217

Consolidated Electrical Distributors, In
8703 Botts Street
San Antonio, TX 78217-6334

Corridor Mobile Medical Services
8626 Tesoro Drive, Suite 210
San Antonio, TX 78217-6217

Crown Custom Builders
5515 Royal Vista Drive
San Antonio, TX 78247-4669

DBR Engineering Consultants
8626 Tesoro Drive, Suite 702
San Antonio, TX 78217-6234

David Van Os
8626 Tesoro Drive, Suite 510
San Antonio, TX 78217-6217

Ferguson Facilities Supply
P.O. Box 100286
Atlanta, GA 30384-0286

Flo-Aire Service, Inc.
9811 Cobb Street
San Antonio, TX 78217-3717

GONRE LLC
8626 Tesoro Drive, Suite 420
San Antonio, TX 78217-6207

Good Guys Remodeling & Landscaping
19141 Stone Oak Pkwy #104
San Antonio, TX 78258-3367

Green Carpet Co.
8480 Fourwinds Dr
San Antonio, TX 78239-1946

Hayden & Cunningham, PLLC
7750 Broadway
San Antonio, TX 78209-3244

Hayden & Cunningham, PLLC
c/o D. Wade Hayden
7750 Broadway
San Antonio, Texas 78209-3244

Healthcare Compliance Readiness
8626 Tesoro Drive, Suite 815
San Antonio, TX 78217-6234

Hezel & Associates, Inc
8626 Tesoro Drive, Suite 470
San Antonio, TX 78217-6217

Internal Revenue Service
8700 Tesoro Dr., Suite 200
San Antonio, TX 78217-6224

Internal Revenue Service - Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

International Academy of Tax & Trade Law
8626 Tesoro Drive, Suite 205-H
San Antonio, TX 78217-6217

James Adam Cotter
23019 Steeple Bluff
San Antonio, TX 78256-1603

James Andrew Cotter
6 Lincoln Place
Rancho Mirage, CA 92270-1928

James Vale Lee Cotter
28 Morning Green
San Antonio, TX 78257-2602

Juan Carlos Santandreu
8626 Tesoro Drive, Suite 205-O
San Antonio, TX 78217-6217

Kristina Dupre
8626 Tesoro Drive, Suite 205-L
San Antonio, TX 78217-6217

Laura Lizette Nale
8626 Tesoro Drive, Suite 806
San Antonio, TX 78217-6217

Marcus P. Rogers, Independent Administrator
the Estate of James F. Cotter, deceased
c/o Benjamin R. Bingham
319 Maverick Street
San Antonio, Texas 78212-4637

Massengale Armature
1031 Basse Rd
San Antonio, TX 78212-1099

Matera Paper Company
P.O. Box 200184
San Antonio, TX 78220-0184

Miles D. Witt, II (Hypnotherapy)
8626 Tesoro Drive, Suite 205-V
San Antonio, TX 78217-6217

National Compressor Exchange, Inc.
6185 Jimmy Carter Blvd. Unit G
Norcross, GA 30071-4604

National Tech, LLC.
8626 Tesoro Drive, Suite 315
San Antonio, TX 78217-6217

Net Financial Insurance
8626 Tesoro Drive, Suite 205-K
San Antonio, TX 78217-6217

O'Connor & Associates
2200 North Loop West Suite 200
Houston, TX 77018-1754

Perdue Brandon Fielder Collins
8626 Tesoro Dr #816
San Antonio, TX 78217-6217

Philip J. Rodriguez Plumbing
5878 Castle Hunt
San Antonio, TX 78218-4111

Phoenix Biotechnology, Inc.
8626 Tesoro Drive, Suite 801
San Antonio, TX 78217-6217

Plant Interscapes
6436 Babcock Rd
San Antonio, TX 78249-2900

Pulman Cappuccio et al.
c/o Randall A. Pulman
2161 NW Military Hwy., Suite 400
San Antonio, TX 78213-1844

Randy Cavazos
8626 Tesoro Drive, Suite 205-R
San Antonio, TX 78217-6217

Real Estate Council of San Antonio
8626 Tesoro Drive, Suite 803
San Antonio, TX 78217-6217

Roto Rooter Plumbing & Drain Service
P.O. Box 487
Newman Lake, WA 99025-0487

San Antonio Counseling and Behavior
8626 Tesoro Drive, Suite 202
San Antonio, TX 78217-6217

Sickle Cell Ass'n of Texas
8626 Tesoro Drive, Suite 205-J
San Antonio, TX 78217-6217

SimplexGrinnell
50 Technology Drive
Attn:Bankruptcy
Westminster, MA 01441-0001

Statewide Patrol, Inc.
8626 Tesoro Drive, Suite 504
San Antonio, TX 78217-6217

Steve Villa Insurance Agency
8626 Tesoro Drive, Suite 814
San Antonio, TX 78217-6217

TIGTA
8700 Tesoro Dr, Suite 250
San Antonio, TX 78217-6208

Team Integrated Engineering, Inc.
8626 Tesoro Drive, Suite 430
San Antonio, TX 78217-6215

Texas Chiller Systems, LLC
P.O. Box 792248
San Antonio, TX 78279-2248

Texas Chiller Systems, LLC
c/o J. Philip Collier
Law Office of J. Philip Collier
8023 Vantage Drive, Ste. 680
San Antonio, Texas 78230-4752

Texas Comptroller of Public Accounts
Rachel R. Obaldo, Asst. Attorney General
c/o Sherri K. Simpson, Paralegal
P.O. Box 12548
Austin, TX 78711-2548

Texas Comptroller of Public Accounts
c/o Office of the Attorney General
Bankruptcy - Collections Division MC-008
PO Box 12548
Austin TX 78711-2548

The United States Marine Corp.
8700 Tesoro Dr #180
San Antonio, TX 78217-6208

Time for Taxes
8626 Tesoro Drive, Suite 205F
San Antonio, TX 78217-6217

Total Com Management, Inc.
P.O. Box 460230
San Antonio, TX 78246-0230

Trace Company
P.O. Box 845053
Dallas, TX 75284-5053

Trane US, Inc.
3600 Pammel Creek Road
La Crosse, WI 54601-7511

United States Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0009

United States Attorney/IRS
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5597

United States Trustee
P.O. Box 1539
San Antonio, TX 78295-1539

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
PO Box 1539
San Antonio, TX 78295-1539

Valeri Marie Cotter Zaharie
5743 E. Shoreline
Post Falls, ID 83854-6855

Vivian Claudette Mueller
102 Kathy Drive
Kerrville, TX 78028-9744

Wanderlust Ironworks
12125 Jones Maltsberger
San Antonio, TX 78247-4202

Waste Management of Texas, Inc.
P.O. Box 660345
Dallas, TX 75266-0345

Whitaker Insurance Association, Inc.
8626 Tesoro Drive, Suite 310
San Antonio, TX 78217-6289

Wilfrido Cabuto
2303 Oakline Dr.
San Antonio, TX 78232-4683

Will's All Pro Plumbing & A/C
7847 Fortune Dr
San Antonio, TX 78250-5108

Winsupply
520 N Virginia
Oklahoma City, OK 73106-2630

Zavala Painting
3214 Chamita
San Antonio, TX 78211-4518

H. Anthony Hervol
Law Office of H. Anthony Hervol
4414 Centerview Dr, Suite 200
San Antonio, TX 78228-1442

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Alliance Shippers Inc
Robyn H Lefcourt
General Counsel
516 Sylvan Ave
Englewood Cliffs NJ 07632

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Pulman Cappuccio, et al.
c/o Randall A. Pulman
2161 NW Military Hwy., Suite 400
San Antonio, TX 78213-1844

End of Label Matrix
Mailable recipients    98
Bypassed recipients     1
Total                  99