**The relief described hereinbelow is SO ORDERED.**

**Signed April 03, 2019.**

_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PETROLEUM TOWERS – COTTER, LLC, | § | CASE NO. 18-50197-RBK |
| | § | |
| DEBTOR | § | CHAPTER 11 |

### ORDER APPROVING SALE OF PROPERTY OF THE ESTATE
### FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

On April 2, 2019, came on to be considered the Motion to Sell Property of the Estate Free and Clear of Liens, Claims, Encumbrances and Interests (the "Sale Motion") filed by Petroleum Towers – Cotter, LLC (the "Debtor" or "Seller" herein). The Court, having considered the Sale Motion, the record in the case, the evidence presented, and the statements and argument of counsel, finds that the Motion has merit and should be **APPROVED** as provided herein.

In connection with this Order, the Court makes the following findings of fact and conclusions of law herein for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are

adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

### Jurisdiction, Final Order and Statutory Predicates

1.     The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested in the Motion are sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Property to be Conveyed

3.     The Court finds that the property that is the subject of this Order is all of the Debtor's right, title, and estate interest in and to all of the following:

A.     The real property located at 8626 and 8700 Tesoro Dr., San Antonio, Texas 78217, which is commonly known as the "Petroleum Towers" and described on the attached Exhibit "A", together with all structures, buildings, improvements and fixtures affixed or attached thereto and all easements and rights appurtenant thereto, including, without limitation: (i) all easements, privileges, tenements, hereditaments, appurtenances and rights belonging or in any way appurtenant to such real property; (ii) any strip or gore or any land lying in the bed of any street, road, alley or right-of-way, open or closed, adjacent to or abutting such real property; and (iii) any and all air rights, subsurface rights, development rights and water rights permitting to such real property (all of the foregoing being collectively referred to herein as the "Real Property");

B.     All leases, including associated amendments, with all persons ("Tenants") leasing the Real Property or any portion thereof as of the Effective Date[1] or entered into in accordance with the Agreement[2] prior to Closing[3] (collectively, the "Leases"), together with all security deposits held in connection with the Leases and all of Seller's right, title and interest in and to all guarantees and other similar credit enhancements providing additional security for such Leases;

C.     Seller's interest, if any, in (i) any and all tangible personal property owned by Seller located on or used exclusively in connection with the Real Property, including, without limitation,

---

[1] The "Effective Date" under the Agreement is February 22, 2019.
[2] The "Agreement" is the Agreement for Purchase and Sale attached to the Sale Motion as Exhibit "B".
[3] The "Closing" is defined under paragraph 7.2 of the Agreement as the date that is thirty (30) days after the expiration of the Inspection Period (as the same may be extended in accordance with the terms of the Agreement).

sculptures, paintings and other artwork, equipment, furniture, tools and supplies located on the Real Property as of the Effective Date, but expressly excludes the Debtor's bank accounts, whether deposit, checking, escrow, lockbox or other, with Broadway National Bank (collectively, the "Tangible Personal Property"); and (ii) any and all plans and specifications, architectural and engineering drawings and the common name of the Real Property (collectively, the "Intangible Personal Property," and collectively with the Tangible Personal Property, the "Personal Property");

D.      All service contracts which Buyer expressly agrees to assume in writing prior to the expiration of Buyer's Inspection Period, entered into by Seller relating to the operation of the Property as of the Effective Date or entered into by Seller in accordance with the Agreement prior to Closing, excluding Seller's insurance and Seller's asset and property management agreements, which will be terminated at Closing and not assumed by Buyer (collectively, the "Contracts"); provided, however, that Seller shall, at Closing, provide notices of termination with regard to certain Contracts, as provided in the Agreement; and

E.      To the extent transferable, any and all building permits, certificates of occupancy and other certificates, permits, consents, authorizations, variances or waivers, dedications, subdivision maps, licenses and approvals from any governmental or quasi-governmental agency, department, board, commission, bureau or other entity or instrumentality relating to the Real Property (collectively, the "Permits").

(collectively, all of the foregoing shall hereinafter be referred to as "the Property").

## Background

### A.      The Debtor's Business

4.      The Debtor is a Delaware single member limited liability company with its principal place of business and all of its assets located in San Antonio, Texas.  The Debtor owns and operates two eight-story commercial real estate office buildings with surrounding parking facilities on 9.601 acres, located at 8626 and 8700 Tesoro Drive, San Antonio, Texas, which are commonly known as the "Petroleum Towers".

5.      This is a single asset real estate bankruptcy as defined by 11 U.S.C. §101(51B). Debtor's primary assets are the Petroleum Towers properties.

6.      The Debtor filed this case seeking to reorganize its debts under Chapter 11 of the Bankruptcy Code through a liquidating plan.  Debtor has an essential need to sell the Petroleum

Towers properties, payoff the ad valorem property taxes and other valid liens encumbering the property, and to satisfy as much of the priority and general unsecured debt as possible. This case was filed with the goal of freeing up resources to allow the Debtor to make certain critical repairs to its most valuable assets, provide the Debtor time to sell the Petroleum Towers properties, pay off the Debtor's creditors, and preserve any remaining equity for the heirs of the Cotter Estate.

**B.      Debtor's Marketing/Sales Efforts and the Sale Procedures Motion**.

7.      On February 16, 2018, the Debtor filed an Application to Employ Cushman & Wakefield ("Cushman") as Real Estate Broker for the Debtor-in-Possession (Doc. #21). An Order Approving the retention of Cushman as Broker for the Debtor was entered on March 13, 2018 (Doc. #31) under the terms of the Listing Agreement for Sale attached as Exhibit "A-1" (Doc. #21-1) to the Application (the "Listing Agreement").

8.      Pursuant to the terms of the Listing Agreement, Cushman marketed the Property employing a thorough and time-tested sales process that commenced on January 15, 2018, and ended at the end of January, 2019. Specifically, Cushman took the following steps to market the Property:

A.      On or about February 28, 2018, Cushman released a sales flyer to 6349 potential buyers in a database maintained by Cushman which contained contact information for buyers and investors who are known to be interested in properties of this type. The flyer contained information on all of the Houston and San Antonio area properties in the Cotter Estate portfolio, inviting potential buyers to seek additional information on all or a single Cotter property.

B.      On the same date, Cushman also released an offering memorandum which contained 182 pages of detailed information on the Cotter Estate properties, including information on each individual property, the markets in which such properties were situated, and financial

information concerning the properties.  The offering memorandum was set up to be accessed online by buyers who desired further information.

C.      Cushman also established a Virtual Data Room (the "VDR") containing the following types of documents that a potential buyer would find important prior to making a decision about bidding on the Property: copies of leases, operating statements, service agreements and capital expenditure histories.  Any potential buyer could access the detailed information concerning a particular property by requesting access to the VDR and completing a confidentiality agreement.  The Property was also listed on various commercial real estate marketing websites such as LoopNet.com and Costa Real Estate (Costare.com).

D.      Cushman received a total of 120 requests for confidentiality agreements.  A total of 89 potential investors accessed information from the VDR concerning the Property.

E.      Cushman completed at total of 23 tours of the Property with potential buyers who requested such a tour.

F.      Cushman set a timeline for potential buyers to make bids on the Property.  Buyers first presented initial offers which were due by the beginning of May, 2018.  A total of 57 offers were made for multiple Cotter properties which included the Petroleum Towers properties.  A total of 9 offers were made exclusively on the Petroleum Towers properties by potential buyers.

G.      Subsequently, parties were invited to make "Best and Final Bids".  After receiving such updated bids, three potential buyers were selected to be interviewed by Cushman and a representative of the Debtor.

H.      At the conclusion of the sales and marketing process, it was determined that the best and final bid was made by an entity known as Windmill Investments, LLC (hereinafter "Windmill" or the "Buyer"). According to its website, Windmill "is a private real estate investment

company specializing in the identification of undervalued or under-performing properties with strong growth potential . . . work[ing] with single-family homes, multifamily apartment complexes and commercial offices." Windmill's bid for the Property is $15,700,000.00 (the "Purchase Price"). The bid is not sufficient to pay all of the secured debt owed against the Petroleum Towers properties, however, in consultation with the Debtor's Broker, it has been determined that the bid submitted by the Buyer is the highest or otherwise best offer for the Property. On February 4, 2019, Cushman advised the Windmill's representative of the winning bid.

I.     Counsel for the Buyer and the Estate of James F. Cotter, Deceased, negotiated, and the parties executed, an Agreement for Purchase and Sale of the Property (the "Agreement") on February 22, 2019, a true and correct copy of which is attached to the Sale Motion as Exhibit "B".

**Notice of the Sale**

9.     Notice of the Sale Motion and the proposed entry of this Order was provided to all known parties in interest, including (i). all creditors and parties in interest listed on the Court's master service list filed in this case; (ii). The Office of the United States Trustee; (iii). the Internal Revenue Service; (iv). all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon the Property (as defined herein) and their attorneys of record entering an appearance herein; and (v). all applicable United States, state or local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the Property.

10.    Notice of the sale of the Property (the "Sale") and the hearing on the Sale Motion (the "Sale Hearing") was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and Sale Hearing.

11.     As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate and sufficient notice of the Sale Hearing, Sale and the transactions contemplated thereby was provided in accordance with the orders previously entered by this Court, section 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, 6006, 9007 and 9014.  The notices described herein were good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Sale Hearing, or the Sale is or shall be required.  Notice was adequate and sufficient under the circumstances of the case, and such notice complied with all applicable requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

12.     The disclosures made by the Debtor concerning the Agreement, Sale Motion, Sale and designation of Buyer as the maker of the Highest of Otherwise Best Offer were good, complete and adequate.

13.     A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

**Good Faith of Purchaser**

14.     The Agreement was negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith and from arms'-length bargaining positions.

15.     The Buyer is not an "insider" or "affiliate" or the Debtor as those terms are defined in the Bankruptcy Code.  Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Buyer has not acted in a collusive manner with any person, and the aggregate price paid by the Buyer for the Property was not controlled by any agreement among competing bidders for the Property.

16.     The Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer proceeded in good faith in connection with all aspects of the Sale, including: (i) participating in good faith in the sales process; (ii) neither inducing nor causing the Debtor's Chapter 11 filing; and (iii) disclosing all payments to be made by the Buyer in connection with the Sale.  Accordingly, the Buyer is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

**Highest or Otherwise Best Offer**

17.     After being adequately exposed to the market for approximately one year, the bid submitted by the Buyer is the highest or otherwise best offer for the Property.  The marketing process employed to date was an efficient process that was well designed to maximize the return from the sale of the Property for the benefit of the Debtor's estate and its creditors.  It has been publicly announced since February, 2018, that the Debtor desired to sell the Property, and the Debtor's Broker marketed the Property thoroughly and diligently as described herein.  As of the date of this Motion, no other person or entity has submitted an offer to purchase the Property for an amount that would allow the Debtor's Estate to realize a greater economic value than the offer submitted by Buyer.  Therefore, under the guidelines established by the Court, the Debtor's representative's determination that the Agreement constitutes the highest or otherwise best offer for the Property is a good, valid and sound exercise of the Debtor's business judgment.

**No Fraudulent Transfer**

18.     The consideration provided by the Buyer pursuant to the Agreement, (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Property, (iii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative and (iv) constitutes reasonable equivalent value (as those terms are defined in each of the Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Debtor's determination that the Agreement constitutes the highest or otherwise best offer for the Property constitutes a valid and sound exercise of the Debtor's representative's business judgment. Approval of the Sale Motion, Agreement, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors and other parties-in-interest including the equity owner(s) of the Debtor.

19.     The Buyer is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Buyer and the Debtor. The Buyer is not holding itself out to the public as a continuation of the Debtor. The Buyer is not a successor of the Debtor or its estate and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer and the Debtor.

## Validity of Transfer

20.     The Debtor and its representative have (i) full corporate and partnership power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (ii) all corporate and partnership authority necessary to consummate the transactions contemplated by the Agreement and (iii) taken all corporate and partnership action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate and partnership actions. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Sale, Agreement or transaction contemplated thereby.

21.     The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtor nor the Buyer are fraudulently entering into the transaction contemplated by the Agreement.

22.     The Debtor has good and marketable title to the Property and is the lawful owner of the Property.  Pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Property to the Buyer will be, as of the closing of the Sale (the "Closing Date"), a legal, valid and effective transfer of the Property, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtor to the Property free and clear of (i) all liens (as that term is defined in section 101(37) of the Bankruptcy Code), claims and encumbrances (including any right of first offer or refusal regarding or option to purchase any real property) relating to, accruing or arising any time prior to the Closing Date (collectively, the "Liens") and (ii) all debts arising under, relating to or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligation, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise.  Notwithstanding the forgoing, the transfer of the Property by the Debtor to the Buyer shall not be construed to invalidate any Leases or Contracts which are to be assumed and assigned to the Buyer at closing. Further, nothing contained in this Order or the sale contemplated herein shall affect Broadway National Bank's rights and remedies to seek, pursue, collect and or secure any deficiency or shortfall in payment of its debts, including interest, costs and attorney's fees from any entity other than Buyer.

**Section 363(f) Is Satisfied**

23.     The conditions of section 363(f) of the Bankruptcy Code have been or will be satisfied in full; therefore, the Debtor may sell the Property free and clear of any interest in the Property, other than the Leases or Contracts which are to be assumed and assigned to the Buyer at closing.

24.     The Debtor may sell the Property free and clear of all Liens, Claims and other interests of any kind or nature whatsoever against the Debtor, its estate or the Property because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.   Those holders of Liens and Claims against the Debtor, its estate, or the Property, who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

25.     Notwithstanding the foregoing, the Debtor has agreed that Presidio Title (the "Title Company") shall conduct the closing of the sale, and in connection with such closing, shall pay from the proceeds of the Sale the following governmental entities the full amount of taxes or assessments due, pro-rated to the date of closing:

(A).     Bexar County.

26.     Notwithstanding the foregoing, the Debtor has also agreed that the Title Company should pay to Broadway National Bank 100% of the remaining sales proceeds, after deducting the property taxes paid to Bexar County and the brokerage commissions and costs of sale attributable to the seller under the Agreement.

27.     With respect to the entities holding Mechanic's Liens against the Property, the entity which owns and controls the Debtor has consented to payoff such entities at the Closing of the sale referenced herein in exchange for fully executed releases of such Mechanic's Liens.

**Compelling Circumstances for an Immediate Sale**

28.      Good and sufficient reasons for approval of the Agreement and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest, including the equity owners of the Debtor.  The Debtor has demonstrated (i) good, sufficient and sound business purposes and justifications for approving the Agreement, and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a plan of liquidation, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to its creditors and minimize the deficiency liability of its equity owners.

29.      Given all of the circumstances of this Chapter 11 case and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's representative's business judgment and should be approved.

30.      The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

**General Provisions**

It is therefore, **ORDERED, ADJUDGED and DECREED** that the Sale Motion is in all respects **GRANTED**.

It is further **ORDERED, ADJUDGED and DECREED** that, except as otherwise stated herein, the provisions of this Order are subject to the Closing Date having occurred in accordance

with the terms of the Agreement and this Order.

It is further **ORDERED, ADJUDGED and DECREED** that any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled by announcement to the Court during the Sale Hearing, the provisions of this Order, or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise (except any reservations of right and objections expressly preserved in this Order), are hereby denied and overruled with prejudice. Those parties who did not object or withdraw their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code to the Sale of the Property in accordance with the terms of this Order.

It is further **ORDERED, ADJUDGED and DECREED** that all terms of the Agreement are hereby approved, unless modified by this Order. It is further **ORDERED, ADJUDGED and DECREED** that, pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate to Sale pursuant to and in accordance with the terms and conditions of the Agreement, (ii) close the Sale as contemplated by the Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement and fully close the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the same and the Sale.

It is further **ORDERED, ADJUDGED and DECREED** that this Order shall be binding in all respects upon (a) the Debtor, (b) its estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders or Liens, Claims or other interests (whether known or unknown) in, against or on all or any portion of the Property, (e) the Buyer and all successors and assigns of the Buyer, (f) the Property and (g) any trustees, if any, subsequently appointed in the Debtor's chapter

11 case or upon a conversion of this case to a case under chapter 7 of the Bankruptcy Code.  This Order and the consideration contained in the Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Buyer and the respective successors and assigns of each of the foregoing.

It is further **ORDERED, ADJUDGED and DECREED** that nothing contained in this Order or the sale contemplated herein shall affect Broadway National Bank's rights and remedies to seek, pursue, collect and or secure any deficiency or shortfall in payment of its debts, including interest, costs and attorney's fees from any entity other than Buyer.  Specifically, the automatic stay provided by 11 USC 362 terminates as to Broadway National Bank upon the Closing, to allow Broadway National Bank to apply, pay or setoff all of debtor's accounts it holds against all debts it is due.

## Transfer of the Property

It is further **ORDERED, ADJUDGED and DECREED** pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Property to the Buyer, and such transfer shall (a) constitute a legal, valid, binding and effective transfer of the Property, (b) vest the Buyer with title to the Property and (c) upon the Debtor's receipt of the Purchase Price, be free and clear of all Liens, Claims and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims. For the avoidance of doubt, Liens (including mechanics, materialmen and subcontractor Liens) and rights to receive payment of trust funds, Claims and other interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect that they now have as against the Property.  Upon the closing of the Sale (the "Closing"), the Buyer shall take title to and possession of the Property.

It is further **ORDERED, ADJUDGED and DECREED** that at Closing, Presidio Title (the "Title Company") shall be and is hereby authorized and directed to pay the full amount of taxes or assessments due and owing to the following governmental entities, pro-rated to the date of closing:

      (A).    Bexar County.

It is further **ORDERED, ADJUDGED and DECREED** that the ad valorem taxes for year 2019 pertaining to the subject Property (included both real and personal property tax accounts) shall be prorated in accordance with the Agreement, and shall become the responsibility of the Buyer.  The year 2019 ad valorem tax lien shall be retained against the subject Property (both real and personal) until said taxes are paid in full.

It is further, **ORDERED, ADJUDGED and DECREED** that at Closing, the Title Company shall pay from the proceeds of the Sale the Brokerage commission and reimbursement of marketing expenses of Cushman & Wakefield and all other closing costs attributable to the Seller under the Agreement.

It is further **ORDERED, ADJUDGED and DECREED** that, unless an order dismissing the Debtor's case has been entered herein, the Title Company shall also pay the sum of $150,000.00 to the United States Trustee at the following address, which sum would be applied to the Debtor's quarterly U.S. Trustee's fees:

      U.S. Trustee Payment Center
      P.O. Box 530202
      Atlanta, GA 30353-0202
       Re: Petroleum Towers – Cotter, LLC, Acct. No. 425-18-50197

It is further, **ORDERED, ADJUDGED and DECREED** that at Closing, the Title Company shall pay 100% of the remaining proceeds from the Sale to Broadway National Bank towards satisfaction of the indebtedness due and owing to Broadway National Bank.

It is further, **ORDERED, ADJUDGED and DECREED** that the following entities shall provide fully executed releases of mechanic's and materialman's liens upon payment in full of the sums shown in the affidavits or documents claiming such sums which have been filed against the Property:  Trane US, Inc. and Texas Chiller Systems, LLC.  In connection therewith, it is anticipated that these mechanic's and materialman's liens will be paid directly by the entity which controls the Debtor.  Neither Trane US, Inc. nor Texas Chiller Systems, LLC will be required to execute and provide the releases unless and until they receive payment of the full amount claimed in their affidavits recorded in the real property records of Bexar County, Texas.

It is further **ORDERED, ADJUDGED and DECREED** that all persons or entities that are in possession of some or all of the assets comprising the Property on the Closing Date are directed to surrender possession of the same to the Buyer or its assignee at the Closing.  The provisions of this Order authorizing the sale of the Property free and clear of Liens, Claims and other interests of any kind or nature whatsoever shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order, other than the documents referenced in the Agreement.

It is further **ORDERED, ADJUDGED and DECREED** that the Debtor and its representative are hereby authorized to take any and all actions necessary to consummate the Agreement, including any actions that otherwise would require further approval by shareholders or any of the Debtor's boards of directors or boards of managers, as the case may be, without the need of obtaining such approvals.

It is further **ORDERED, ADJUDGED and DECREED** that, after the Closing has occurred, a certified copy of this Order may be filed with the appropriate clerk and/or recorded

with the recorder to act to cancel any liens and other encumbrances of record.

It is further **ORDERED, ADJUDGED and DECREED** that, after the Closing has occurred, or as soon as possible thereafter, each creditor is authorized and directed, and the Buyer is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Liens, Claims and other interests in or on the Property (except as otherwise provided in this Order), if any, as provided for herein, as such Liens, Claims and interests may have been recorded or may otherwise exist.  Provided however, the foregoing is ordered as an abundance of caution only, and in no way limits the scope of this Order that all liens and encumbrances of any nature are released at closing as against the Property by the terms of this Order regardless of the execution of a separate release by any creditor or claimant.

It is further **ORDERED, ADJUDGED and DECREED** that, after the Closing has occurred, the Debtor is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtor's corporate name, with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and

the transaction contemplated thereby and hereby.

It is further **ORDERED, ADJUDGED and DECREED** that after the Closing has occurred, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtor's interests in the Property. This Order is and shall be effective as a determination that, after the Closing has occurred, all Encumbrances and other interests of any kind or nature whatsoever existing as to the Property prior to the Closing Date, including without limitation any hypothecation, encumbrance, liability, Lien, Claim, Interest, security interest, security agreement, interest, mortgage, pledge, restriction, covenant, charge, license, preference, reclamation claim, cause of action, suit, contract, right of first refusal, offset and recoupment (except as specifically excepted in this Order) alter-ego, transferee or successor liability claims, tax (including federal, state and local tax), Governmental Order of any kind or nature, conditional sale or other title retention agreement or lease having substantially the same effect as any of the foregoing, assignment or deposit arrangement in the nature of a security device, whether secured, unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, perfected or unperfected, allowed or disallowed, matured or unmatured, disputed or undisputed, material or immaterial, known or unknown (referred collectively, whether having arisen, been incurred or accrued prepetition or post-petition, whether imposed by agreement, understanding, law, equity or otherwise, as "Encumbrances") pursuant to Section 363(f) of the Bankruptcy Code (other than Leases and Contracts specifically assumed and assigned at Closing), shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any Lease or Contract; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

It is further **ORDERED, ADJUDGED and DECREED** that to the greatest extent available under applicable law, the Buyer shall be authorized, after the Closing has occurred, to operate under any (i) federal, state, or local governmental or regulatory license, permit, registration, and (ii) governmental authorization or approval of the Debtor with respect to the Property, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

It is further **ORDERED, ADJUDGED and DECREED** that to the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Property sold, transferred or conveyed to the Buyer on account of the filing or pendency of the Debtors' chapter 11 case or the consummation of the Sale contemplated by the Agreement. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Agreement and this Order.

It is further **ORDERED, ADJUDGED and DECREED** that notwithstanding anything contained in this Order or the Agreement to the contrary, nothing in this Order or the Agreement releases Buyer from compliance with any applicable license, permit, registration, authorization, or approval of or with respect to a governmental unit as though such sale took place outside of bankruptcy. Buyer shall continue to honor and comply with the terms and requirements of any such applicable license, permit, registration, authorization or approval.

It is further **ORDERED, ADJUDGED and DECREED** that notwithstanding anything contained in this Order or the Agreement to the contrary, nothing in this Order or the Agreement shall authorize the transfer or assignment of any license if such transfer or assignment is prohibited by applicable nonbankruptcy law.

## Prohibition of Actions Against the Buyer

It is further **ORDERED, ADJUDGED and DECREED** that, except as expressly provided for in this Order or the Agreement, the Buyer shall not have any liability or other obligation of the Debtor arising under or related to the Property, and the Buyer is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtor and/or its estate under any theory of law or equity. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, the Buyer shall not be liable for any Claims against the Debtor or any of its respective predecessors or affiliates, and the Buyer shall have no successor, transferee or vicarious liabilities of any kind or character.

It is further **ORDERED, ADJUDGED and DECREED** that, after the Closing has occurred, and except as otherwise expressly provided for in this Order or the Agreement, all persons and entities, including, but not limited to, all debt security holders, equity security holders,

governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Property, the operation of the Debtor's business prior to the Closing Date or the transfer of the Property to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, and any of its affiliates, any of the foregoing's successors, assigns, assets or properties or the Property, such persons' or entities' Liens, Claims or interests in and to the Property, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Buyer, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (c) creating, perfecting or enforcing any Lien or other Claim against the Buyer, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer, any of its affiliates or any of the foregoing's successors or assigns (except for those counterparties to the Leases or Contracts expressly assumed under the Agreement); (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order, other orders of the Court or the Agreement or actions contemplated or taken in respect thereof; (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate part or all of the Property or conduct any of the business operated with the Property.

It is further **ORDERED, ADJUDGED and DECREED** that all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Property to the Buyer in accordance with the terms of the Agreement and this Order.

### Fair and Reasonable Consideration; Good Faith

It is further **ORDERED, ADJUDGED and DECREED** that after the Closing has occurred, the Buyer will have given substantial consideration under the Agreement for the benefit of the Debtor, its estate, its creditors, and its equity owners. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to the Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens against, interests in or Claims against any of the Debtor or the Property. The consideration provided by the Buyer for the Property under the Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

It is further, **ORDERED, ADJUDGED and DECREED** that the transactions contemplated by the Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending appeal. Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

**Applicability of Sale Order upon Dismissal or Conversion**

It is further, **ORDERED, ADJUDGED and DECREED** that the provisions of this Order shall apply in the event this case is dismissed or converted to a different Chapter of Title 11, United States Code.

**Immediate Effect**

It is further, **ORDERED, ADJUDGED and DECREED** that this Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, Federal Rule of Civil Procedure 62(a) or otherwise.  The Debtor and the Buyer are authorized to close the Sale immediately upon entry of this Order.

# # #

ORDER SUBMITTED BY:

LAW OFFICES OF H. ANTHONY HERVOL
4414 Centerview Road, Suite 207
San Antonio, TX 78228
Telephone: (210) 522-9500
Fax: (210) 522-0205
Email:  hervol@sbcglobal.net

__/s/_H. Anthony Hervol_____
  H. Anthony Hervol
  State Bar No. 00784264
  COUNSEL FOR DEBTOR

## EXHIBIT A

## LEGAL DESCRIPTION

A 9.601 acre tract of land, being all of LOT 2, BLOCK 2, NEW CITY BLOCK 16045, BROADWAY PLAZA SUBDIVISION, UNIT 2, in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 6900, Page 174, Deed and Plat Records of Bexar County, Texas, and LOT 5, BLOCK 2, NEW CITY BLOCK 16045, BROADWAY PLAZA SUBDIVISION, UNIT 7, in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 7100, Page 65, Deed and Plat Records of Bexar County, Texas, SAVE AND EXCEPT however, 0.2779 acres out of said Lot 5 according to the Deed recorded in Volume 3608, Page 1787 of the Official Public Records of Real Property of Bexar County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a found nail in concrete on the east right-of-way line of Tesoro Drive (60' wide public right-of-way), the northwest corner of Lot 3 as recorded in Volume 6900, Page 221, the south corner of Lot 5 and of this tract, and being 159.34' from the point of intersection of Cheever Boulevard;

THENCE North 05 degrees 12 minutes 06 minutes East (bearings are based on the plat recorded in Volume 6900, Page 174) 83.83' with the east right-of-way line of Tesoro Drive to the beginning of a curve to the left;

THENCE with east right of way line of Tesoro Drive and the curve to the left (concave to the west) having a radius of 430.00, a delta of 53 degrees 31 minutes 31 seconds, an arc length of 401.70' to a found 60d nail & cap;

THENCE North 48 degrees 18 minutes 04 seconds West 287.55' with the east right-of-way line of Tesoro Drive to a found "+" scribed on concrete, the south corner of Lot 8 as recorded in Volume 6100, Page 94, the west corner of Lot 2, and of this tract;

THENCE North 41 degrees 41 minutes 46 seconds East 300.09' with the southeast line of Lot 8 and the northwest line of Lot 2 to a found 1/2" rebar on the southwest line of a 40' wide Coastal States Gas Line, the east corner of Lot 8, the north corner of Lot 2 and of this tract;

THENCE South 48 degrees 18 minutes 01 seconds East 1149.81' with the southwest line of the Coastal States Gas Line and the northeast line of Lots 2 and 5 to a found 60d nail & cap, the north corner of an 18' Alley, the east corner of Lot 5 and of this tract;

THENCE South 40 degrees 47 minutes 20 seconds West 194.21' with the northwest line of the 18' Alley and the southeast line of Lot 5 to a found 1/2" rebar, the east corner of Lot 6 as recorded in Volume 7500, Page 224, the southeast corner of Lot 5 and of this tract;

THENCE North 84 degrees 45 minutes 29 seconds West 584.36' partially crossing and partially with the south line of Lot 5 and with the north line of Lot 6 and said Lot 3 to the POINT OF BEGINNING.